IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

VICTOR E. CRETELLA, III,

                    Plaintiff,

     v.                                     Action No. 3:08–CV–109

DAVID L. KUZMINSKI,

                   Defendant.

MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss by David L. Kuzminski. For the reasons stated below, the Court will GRANT in part and DENY in part the Motion.

1.    Background

On February 7, 2007, Victor E. Cretella, III mailed a letter to Christine Norris on behalf of one of his clients, PublishAmerica LLLP, a publishing company. Norris allegedly published several defamatory comments about PublishAmerica on the internet, and Cretella asked her to stop doing so. Initially, Norris refused to comply, but on February 15, after she received a second letter, she agreed to do so, posting a message on the Absolute Write Water Cooler ("AWWC"), an online forum for aspiring authors, that Cretella was forcing her to stop complaining about PublishAmerica.

The members of the AWWC community reacted quickly and angrily to Cretella's activity on behalf of PublishAmerica. On February 16, Kuzminski posted a message stating that "it's time to report Vic Cretella to the Maryland Bar Association for attempted

1

extortion" and that Cretella's law firm, Gordon and Simmons, "might not want the black[]eye [that] he's giving them."  Kuzminski also posted a copy of an e-mail that he allegedly sent to Gordon and Simmons, as well as several members of the Maryland State Bar Association, stating that "Cretella seems to be involved in what I would characterize as extortion" and that Cretella is "actively ... furthering [PublishAmerica's] unethical[,] if not illegal[,] methods."  Kuzminski added that he "fully intend[ed] to report [Cretella] to the Maryland State Bar Association."  Kuzminski's comments were quoted in several subsequent messages on AWWC, most of which applauded his reaction.

Then, nearly three months later, on May 4, Kuzminski posted a message stating that "[w]e can only speculate on how much embarrassment [Cretella] caused" Gordon and Simmons, which he left in April 2007.  On the same day, in response to a question by Norris, Kuzminski posted a message stating that Cretella "might be just that closer to losing his license" to practice law.  The next day, Kuzminski stated that Cretella "attempt[ed] to attack [another] writer."  Then, in July 2007, Kuzminski posted a message stating that Cretella "is demonstrating why he's no longer with his former firm.  I guess socializing only goes so far, doesn't it, Vic?  Somewhere along the line you actually have to produce."  Kuzminski also claimed on a website that he operates, www.invirtuo.cc/prededitors, that Cretella "has infringed upon or is breaching the terms of [a] contract" executed by PublishAmerica and that "it's time to report Vic for his behavior" to the Maryland State Bar Association.  Finally, in November 2007, Kuzminski repeated his allegations, posting a

message on AWWC that Cretella was forced to leave Gordon and Simmons after he
attempted "to extort payment" from a writer who criticized PublishAmerica.

In response, Cretella filed this suit, claiming that Kuzminski's remarks constituted
defamation. Cretella originally sought $200,000 in compensatory damages and $200,000
in punitive damages. On April 24, 2008, the Court allowed Cretella to amend his
Complaint to add six additional claims for defamation – each asking for $200,000 in
compensatory damages and $200,000 in punitive damages – that rest primarily on the
allegations in the original Complaint.

Kuzminski contends[1] that Cretella fails to state a claim for which relief can be granted
because Kuzminski was entitled to complain about Cretella's conduct via the only channels
that were available to him – to Gordon and Simmons and the Maryland State Bar
Association. Kuzminski also defends his comments on the grounds that (1) they were true,
claiming that Cretella acted unethically because he knew or should have known that
PublishAmerica is poorly regarded in its industry, and thus that Cretella should not have
used "strong arm tactics" to "harm innocent" people; (2) he did not act maliciously,
because he "reported only factual information"; (3) his comments were "rhetorical
hyperbole" and "pure[ly] opinion," motivated only "a desire to see justice performed," not

---

[1] Kuzminski asks the Court to dismiss Cretella's claims in a document whose title is
"Answer," responding to the allegations in Cretella's Complaint in a document entitled
"Pretrial Motion to Dismiss Complaint" that does not identify as its basis any of the grounds
for dismissal provided by Federal Rule of Civil Procedure 12. The Court, regarding
Kuzminski's pleading liberally as the Supreme Court has directed, see Boag v. MacDougall,
454 U.S. 364, 365 (1982), will regard Kuzminski's "Answer" as a motion to dismiss
pursuant to Rule 12(b)(6) and his "Pretrial Motion to Dismiss Complaint" as an answer to
Cretella's Complaint.

malice; (4) the members of AWWC who read Kuzminski's comments already knew about Cretella's conduct; and (5) that any injury that Cretella suffered was caused by his decision to represent "a predatory company."  Kuzminski also alleges that Gordon and Simmons discharged him on the basis of the e-mail that Kuzminski sent.  Finally, Kuzminski complains that PublishAmerica has attempted "to stifle ... dissent" by monitoring his activity and asking him to remove misleading information about PublishAmerica from a site that Kuzminski runs.  Thus, Kuzminski argues, Cretella "is unlikely to prevail in this suit and it should be dismissed."

2.    Standard of review

A motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it.  Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual allegations in the complaint, Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved that are consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, Christopher v. Harbury, 536 U.S. 403, 406 (2002).  But, the court does not have to accept legal conclusions that are couched as factual allegations.  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  The court may grant a Rule 12(b)(6) motion only if it "appears beyond doubt" that the party bringing the

claim cannot prove any facts that would entitle it to relief.  Conley, 355 U.S. at 46; accord Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

In deciding a Rule 12(b)(6) motion, a court may consider a document that is incorporated by reference into the complaint.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007).

3.    Analysis

A.    Virginia law governs this action

Cretella is a resident of Maryland, Kuzminski is a resident of Virginia, and Cretella seeks more than $75,000 in damages.  Thus, the Court has diversity jurisdiction over this case.  See 28 U.S.C. § 1332(a).  If a federal court has diversity jurisdiction over a suit, the court must apply the law of the state in which it sits, Van Dusen v. Barrack, 376 U.S. 612, 637 (1964), including that state's choice-of-law rules, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941).  In a tort action, Virginia applies the law of the place of the wrong.  Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007); accord Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 327 (Va. 2006); see Wiest v. E-Fense, Inc., 356 F. Supp. 2d 604, 608 (E.D. Va. 2005) (applying that rule in a suit for defamation).

This Court has applied Virginia law to a claim that a defamatory statement was published on a website that was controlled from Virginia, Wiest, 356 F. Supp. 2d at 608, as well as to a claim that an allegedly defamatory statement was published in Virginia, Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 915 n.4 (E.D. Va. 2004).  Here,

the parties do not identify the state from which the AWWC is controlled – nor does the site itself provide that information.  The fact that Cretella filed suit in Virginia does not entail that Virginia law governs the case.  Cf. Fuqua Homes, Inc. v. Beattie, 388 F.3d 618, 621 (8th Cir. 2004) (chiding a district court for applying the substantive law of the state in which it sat without applying that state's choice-of-law rules).  But, since (1) the allegedly defamatory statements were published in Virginia and (2) they were probably posted in Virginia, given that Kuzminski resides in Petersburg, Virginia, the Court will apply Virginia law.

B.     Cretella has pled the elements of defamation

The law of defamation balances our society's interest in promoting free discussion about matters of public importance with its "strong interest in preventing and redressing attacks upon reputation."  Rosenblatt v. Baer, 383 U.S. 75, 86 (1966); see Gertz v. Robert Welch, Inc., 418 U.S. 323, 339–42 (1974) (describing the "tension" between those values); see also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 756 (1985) (emphasizing that the state has a "strong and legitimate interest" in compensating a private person for an injury to his reputation).  Under Virginia law, the elements of a claim for defamation are (1) the publication of (2) a false and defamatory statement (3) with the necessary intent.  Jackson v. Hartig, 645 S.E.2d 303, 308 (Va. 2007).

1.     Cretella has alleged that Kuzminski's statements were published

To be published, a statement must be communicated to a person other than the injured party, so that it is heard and understood – to refer to the injured party – by that

6

person.  Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584–85 (Va. 1995); Katz, 332 F. Supp.

2d at 915.  Thus, a written communication is published if it is read by someone other than

the author or the injured party, even if the reader is not the intended recipient of the

message.  Katz, 332 F. Supp. 2d at 915–16 (noting that a telegram is published as soon as it

is delivered to an employee of a telegram company).  Circumstantial evidence is sufficient

to show that a statement was published.  Melton, 458 S.E.2d at 585.

        In Count I of his Amended Complaint, Cretella alleges that Kuzminski posted a

message on AWWC stating (in part) that "it's time to report Vic Cretella to the Maryland Bar

Association for attempted extortion"; "Mr. Cretella seems to be involved in what I would

characterize as extortion"; and Cretella was "actively consorting with [PublishAmerica] in

furthering its unethical if not illegal methods."  Other members of AWWC quoted those

statements, proving that they were communicated to third parties.  And, the fact that the

statements refer to Cretella by name implies that those parties understood that the

statements were about Cretella.  Thus, Cretella has adequately alleged that the statements

supporting Count I of his Amended Complaint were published.

        The other six counts of Cretella's Amended Complaint are based on messages that

Kuzminski allegedly posted on AWWC on May 4, 2007; May 5, 2007; July 10, 2007; July

14, 2007; November 17, 2007; and February 11, 2008.  Cretella has not provided the

Court with any evidence that those messages were published.  But, in the context of this

Motion, the Court must regard as true Cretella's allegations that those statements were

posted on AWWC.  See Erickson, 127 S.Ct. at 2200.  And, if those statements were posted

on a website that is publicly available and visited frequently, there is strong circumstantial

evidence that at least one other person read the statements.   Thus, the Court finds that

Kuzminski's other allegedly defamatory statements were published.   See Conley, 355 U.S.

at 46; Franks, 313 F.3d at 192 (holding that a court may grant a motion to dismiss only if it

"appears beyond doubt" that the party bringing the claim cannot prove any facts that would

entitle it to relief).

2.      Cretella has alleged that Kuzminski's statements were false

Next, to support a claim for defamation, a statement must be false.   Jackson, 645

S.E.2d at 308.   A statement that is "substantially true" – even if it contains "minor or

irrelevant inaccuracies" – cannot be defamatory.   Jordan v. Kollman, 612 S.E.2d 203, 207

(Va. 2005).   The plaintiff must allege a false statement with particularity, Chapin v. Knight-

Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993), and prove that it is false by a

preponderance of the evidence, Food Lion, Inc., 458 S.E.2d at 584.

Thus, an expression of opinion – a statement that cannot be shown to be false –

cannot be defamatory.   Raytheon Tech. Servs. v. Hyland, 641 S.E.2d 84, 90 (Va. 2007).

For example, statements that a person was "frequently verbose and vocal" and

"inappropriately and openly critical," and that she "appeared to be unwilling to accept ...

feedback," were opinions that did not support a claim of defamation.   Id. at 92.   Similarly, a

statement is not defamatory if it cannot reasonably be interpreted as stating a fact about a

person.   Tronfeld v. Nationwide Mut. Ins. Co., 636 S.E.2d 447, 449–50 (Va. 2006); see Old

Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 285

8

(1974) (ruling that "rhetorical hyperbole" and "imaginative expression[s]" cannot be defamatory). Accordingly, calling a union member a "scab" was not defamatory because that statement did not imply that he committed treason. Old Dominion Branch No. 496, 418 U.S. at 285. In addition, an expression of a perspective – i.e., a statement that can be shown to be true, but only in the context of a particular viewpoint – cannot be defamatory. Tronfeld, 636 S.E.2d at 450. Thus, for example, stating that a corporal lacks experience is not defamatory, since a sergeant would agree but a private would disagree. Chaves v. Johnson, 335 S.E.2d 97, 119 (Va. 1985) (noting that the "relative" nature of that statement is "obvious").

But, the fact that a statement conveys an opinion does not by itself entail that the statement is not defamatory. For example, an opinion that is "laden with factual content" may be defamatory. Raytheon Tech. Servs., 641 S.E.2d at 90–91; see Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990) (noting that an expression of "opinion" may often imply an assertion of objective fact, and consequently may be actionable). Moreover, a speaker may not protect himself from liability by qualifying a statement of fact as "my opinion." Swengler v. ITT Corp. Electro-Optical Prods. Div., 993 F.2d 1063, 1071 (4th Cir. 1993). Accordingly, the United States Supreme Court affirmed a judgment that a statement implying that an attorney was "unethical" and "capable of extortion" was a statement of fact. See Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 662 n.3 (1989), aff'g 842 F.2d 825, 840–41 (6th Cir. 1988). The Virginia Supreme Court ruled that a statement that a manager's performance was "significantly" lower than expected was a

statement of fact, even though it implied a judgment.  See Raytheon Tech. Servs., 641

S.E.2d at 91.  And, even though allegations by a doctor's patients that they had been

sexually assaulted by him "were arguably expressions of their ... opinions about the

treatment [that] they had received," they were published as fact and without being placed

in the context of information that contradicted the image that those statements conveyed,

and thus were actionable.  WJLA-TV v. Levin, 564 S.E.2d 383, 393 (Va. 2002).

Thus, a statement that a person has broken the law may amount to an expression of

opinion, one that cannot support a claim of defamation.  See, e.g., Greenbelt Co-op. Pub.

Ass'n v. Bresler, 398 U.S. 6, 14 (1970) (ruling that criticizing a real estate developer's – legal

– tactics as "blackmail" did not constitute an accusation that he had broken the law,

because "even the most careless reader" would perceive "that the word was no more than

rhetorical hyperbole, a vigorous epithet").  On the other hand, many courts have regarded

accusations of unlawful activity as statements of fact.  See, e.g., Carwile v. Richmond

Newspapers, Inc., 82 S.E.2d 588, 591–92 (Va. 1954).

Whether a statement expresses a fact or an opinion is a question of law.  Raytheon

Tech. Servs., 641 S.E.2d at 91.  Thus, the Court does not have to accept Cretella's claim

that Kuzminski's statements were false, since a statement can be false only if it is a statement

of fact, which is a legal conclusion.  See Bell Atl. Corp., 127 S.Ct. at 1964.  But, for the

purpose of ruling on this Motion, the Court must accept Cretella's characterization of any

statements by Kuzminski that constitute statements of fact – i.e., that they are false.  See

Erickson, 127 S.Ct. at 2200; Hishon, 467 U.S. at 73; Christopher, 536 U.S. at 406.

10

Accordingly, the question for the Court to resolve is which, if any, of the statements that Cretella challenges <u>could</u> be shown to be false – i.e., whether they are statements of fact or expressions of opinion.

In Count I, Cretella complains that Kuzminski accused him of engaging in extortion and acting unethically, if not illegally.  Whether Cretella acted in a way that constitutes extortion or violates a law or rule of professional ethics can be verified.  <u>See</u> <u>Harte-Hanks</u> <u>Commc'ns, Inc.</u>, 491 U.S. at 662 n.3 (treating an allegation that an attorney was "unethical" and "capable of extortion" as a statement of fact).  Kuzminski qualified his allegations, by saying that Cretella was "involved in <u>what I would characterize</u> as extortion" and suggesting that the Maryland State Bar Association should "decide whether that's what [Cretella is] involved in."  However, describing a statement as an expression of a personal view does not make it an opinion.  <u>See</u> <u>Swengler</u>, 993 F.2d at 1071.  And, Kuzminski allegedly made those statements in conjunction with a suggestion that Cretella should be reported to the Maryland State Bar Association for engaging in extortion, implying that the belief that Cretella acted wrongly can reasonably be imputed to Kuzminski.  Moreover, the fact that he called for action suggests that the statements were not merely rhetorical hyperbole.  <u>See</u> <u>Levin</u>, 564 S.E.2d at 393 (deciding whether a statement was one of fact or opinion partly on the basis of its context).  Thus, the Court finds that the statements at issue in Count I are statements of fact.

Count II concerns a statement that Cretella "embarrass[ed]" Gordon and Simmons and "resonates with [PublishAmerica] like a glove."  Those comments are judgments, but

they imply that Cretella is no longer employed by Gordon and Simmons and is affiliated in some way with PublishAmerica, which are propositions that can be verified. <u>Compare Raytheon Tech. Servs.</u>, 641 S.E.2d at 91 (ruling that a statement that a sales team "significantly" missed performance targets was "not merely the view of [its author]," since it was accompanied by factual statements). For that reason, the Court finds that Count II involves statements of fact.

The statement at issue in Count III alleges that, prior to contacting Norris, Cretella took action against another author on behalf of PublishAmerica, a move that prompted several complaints. That statement is clearly capable of being verified, and thus is a statement of fact.

In Count IV, Cretella complains that Kuzminski said, "Seems to me ole Vic is demonstrating why he's no longer with his former firm. I guess socializing only goes so far, doesn't it, Vic? Somewhere along the line you actually have to produce." That statement contains relatively little factual content. But, since Count IV will be dismissed on another ground, as discussed below, the Court will not decide whether that statement constitutes a statement of fact.

Count V concerns a statement that alleges, in part, that Cretella "infringed upon or is breaching the terms of [a] contract." It also implies that Cretella violated the Maryland bar's code of professional ethics. Similarly, Count VI alleges that Cretella engaged in extortion. Applying the Court's analysis of Count I, these statements are factual.

Finally, the statement at issue in Count VII is colorful, sarcastic, and confusing.  It suggests that Cretella and Kuzminski "could have been kissing cousins [] except for that awful face paint" and expresses surprise that Cretella "could be so mean," given that he was "so close" to Kuzminski.  The statement also refers to a "can of worms" that was "thrown in the[] lap" of Gordon and Simmons.  Although the statement suggests that Cretella may be angry that he was reported to the Maryland State Bar Association, that implication occurs in the context of a rhetorical question that is laden with irony.  Thus, identifying – much less verifying – any proposition that is conveyed by that portion of the statement is difficult.  Accordingly, since this statement cannot reasonably be interpreted as alleging factual content about Cretella that could be shown to be false, the Court will DISMISS Count VII.

> 3.    <u>Cretella has alleged that Kuzminski's statements were defamatory</u>

If a statement is false, it must also be defamatory: it must "tend ... to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Chapin</u>, 993 F.2d at 1092.  A statement that is "[m]erely offensive or unpleasant" is not defamatory; it must make the plaintiff appear "odious, infamous, or ridiculous."  <u>Id.</u>  In deciding whether a statement is defamatory, a court should interpret its words "in their plain and natural meaning" and "according to the sense in which they appear to have been used."  <u>Carwile</u>, 82 S.E.2d at 591–92.  But, a statement may be defamatory even if it does not explicitly charge a person with wrongdoing: defamation may occur by "implication or insinuation."  <u>Id.</u> at 592.

A statement that (1) "impute[s] to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished"; (2) suggests that the person is not fit "to perform the duties of an office or employment of profit" or lacks "integrity in the discharge of th[ose] duties"; or (3) "prejudice[s the] person in his ... profession" is defamatory per se.[2] Tronfeld, 636 S.E.2d at 449–50; see Swengler, 993 F.2d at 1070 (recognizing that a false statement that "prejudice[s] a person in her or her profession" is defamatory per se).  Obtaining property wrongfully is a crime that involves moral turpitude.  Tronfeld, 636 S.E.2d at 450 (ruling that an accusing an attorney of engaging in conduct that constituted larceny by trick or obtaining money by false pretenses was defamatory).

However, a statement does not have to establish all of the elements of a crime to be defamatory per se.  Schnupp v. Smith, 457 S.E.2d 42, 46 (Va. 1995).  Nor must a statement explicitly impute criminal activity, id.; a statement "imputes the commission of a crime when it refers to matters that would naturally and presumably be understood by those hearing them as charging a crime," Food Lion, Inc., 458 S.E.2d at 584.  Thus, the Virginia Supreme Court concluded that (1) a statement that an attorney who called for an investigation of the Richmond Police Department "cast a shadow across the entire Police Department," in conjunction with (2) a statement that "the State Bar ... may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys," could reasonably be interpreted as charging the

---

[2] In addition, other statements may be defamatory if they cause "special damages."  Great Coastal Express, Inc. v. Ellington, 334 S.E.2d 142, 147 (Va. 1985).

14

attorney with acting unethically or unprofessionally.  Carwile, 82 S.E.2d at 592.  Moreover, the Court found, the statements suggested that the attorney could be disbarred, thereby "tending to injure him in his profession."  Id.  Accordingly, the Court reversed a grant of summary judgment against the attorney.

In contrast, stating that a physician was "inexperienced" and that his fees were too high was not defamatory, because those statements did not impugn his character or standing in his profession, nor did they suggest that he could not perform his job.  Chaves, 335 S.E.2d at 118–19.  And, a statement by a law firm to a group of debtors that an attorney failed to report payments by the debtors were not actionable.  Perk v. Vector Res. Group, Ltd., 485 S.E.2d 140, 144 (Va. 1997) (offering little explanation for this ruling).

Whether a statement is defamatory – or is reasonably capable of conveying a defamatory meaning – is a question of law for a court to decide.  Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005); Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 (Va. 1998).

Counts I and VI involve statements that explicitly accuse Cretella of engaging in extortion, a crime.  See Md. Code, Crim. Law § 3–701 (providing that extortion may be punished by imprisonment and/or a fine); cf. Diamond v. Kenley, 515 F. Supp. 1165, 1175 (E.D. Va. 1981) (Warriner, J.) (including extortion in a list of offenses that involved moral turpitude).  In addition, accusing an attorney of extortion implies that he lacks integrity. Thus, those statements clearly could be found to be defamatory.

The statements at issue in Counts II, III, V, and VII imply that Cretella acted unethically – by (a) suggesting that "he might be ... closer to losing his license" to practice law; (b) speculating that he was forced to leave his law firm because of a "backlash against his attempt to attack" another author, an attempt that prompted complaints to "lawyers in Maryland who [monitor] ethics among M[arylan]d lawyers"; (c) stating that "it's time to report Vic [to the Maryland State Bar Association] for his behavior," as well as a statement that Cretella breached a contract that PublishAmerica entered; and (d) stating that Cretella was reported to the Maryland State Bar Association "for attacking an AW[WC] member," respectively. According to <u>Carwile</u>, criticizing an attorney's conduct, coupled with a discussion of the availability of disciplinary sanctions, can reasonably be interpreted as implying that the attorney acted unethically or unprofessionally. 82 S.E.2d at 592. And, suggesting that an attorney could be disbarred "tend[s] to injure him in his profession." <u>Id.</u> Moreover, charging Cretella with "attacking" an author could dissuade other people from dealing with him, especially since the nature of the "attacks" (which may have been merely aggressive, but legal and ethical, attempts to protect PublishAmerica) is not clear from the context of those statements, thereby damaging his career. Thus, the statements at issue in Counts II, III, V, and VII could be found to be defamatory.

Count IV concerns a statement that strongly implies that Cretella was forced to leave his law firm because he failed "to produce." This statement does not involve allegations of criminal or unethical conduct. Moreover, given the lack of any supporting details, the statement probably would not suggest that Cretella is unfit or damage his career. Thus,

16

because this statement is not reasonably capable of having a defamatory meaning, entailing that this claim cannot succeed as a matter of law, the Court will DISMISS Count IV.

Case 3:08-cv-00109-DWD   Document 15   Filed 05/29/08   Page 18 of 22 PageID# 205


4.     Cretella has alleged that Kuzminski acted negligently

In 2005, the Virginia Supreme Court ruled that the intent that a plaintiff in a suit for defamation must prove depends on (1) whether the plaintiff is a public official or a public figure; and (2) the type of damages that are sought.  Jordan, 612 S.E.2d at 207.  Thus, if a plaintiff is not a public official or a public figure, to recover actual damages the plaintiff must show "that the defendant either knew [that a statement at issue was false], or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based."  Gazette, Inc. v. Harris, 325 S.E.2d 713, 725 (1985).[3]  That rule applies regardless of whether the subject of the statement "relates to a matter of public or general concern," id.; but see WJLA-TV v. Levin, 564 S.E.2d 383, 389, 391–92 (Va. 2002) (ruling that a plaintiff must show actual malice if an allegedly defamatory statement involves a matter of public concern and it was made by a media company).  And, to recover punitive damages, a party must show actual malice – regardless of the status, public or private, of the defendant.  Jordan, 612 S.E.2d at 207.

But, in earlier opinions, that court held that the requisite showing of intent is also determined by the type of harm that is alleged.  See Food Lion, Inc., 458 S.E.2d at 584; accord Harris, 325 S.E.2d at 725.  In Harris, the Virginia Supreme Court held that the negligence standard applies only if the allegedly defamatory statement "makes substantial

---

[3] In the context of a discussion of the impact of this rule on a media company, the Harris Court added that "the careless misstatement of fact which, on its face, does not appear to be defamatory will not result in liability."  325 S.E.2d at 725–26.  It is not clear from Harris whether the "careless misstatement" doctrine also applies to a statement by a defendant that is not a media company.

danger to reputation apparent"; otherwise, the plaintiff must show that the defendant acted

with "actual malice," as the United States Supreme Court explicated that concept in New

York Times Co. v. Sullivan, 376 U.S. 254 (1964).  325 S.E.2d at 725; see WJLA-TV v.

Levin, 564 S.E.2d 383, 391 (Va. 2002) (ruling that whether a statement endangers a

person's reputation is a question of law).  In Food Lion, the Virginia Supreme Court

adopted a slightly different version of that doctrine, ruling that the negligence standard

applies if the plaintiff is not a public figure and the allegedly defamatory statement imputes

the commission of a crime.  458 S.E.2d at 584.  According to the Harris Court, that rule

balances "the right of free expression enjoyed by the individual" with a person's right to

enjoy his reputation.  Id.  Thus, for example, a statement that a physician committed crimes

in the course of his practice, by sexually assaulting patients during pelvic examinations,

"self-evident[ly] ... posed a substantial danger to his reputation as a physician."  WJLA-TV,

564 S.E.2d at 389, 391.

Although Jordan is not clearly consistent with Food Lion and Harris, which were

decided ten and twenty years earlier, respectively, those opinions can be reconciled on the

ground that Jordan was a suit by a public official, whereas Food Lion and Harris were

brought by private individuals.  Thus, the plaintiff in Jordan was required to bear a heavier

burden of proof, one that required a showing of actual malice; so, the Jordan court did not

have to address the circumstances in which the negligence standard applies.

In this case, Cretella (1) is not a public figure or official; (2) he is seeking

compensatory as well as punitive damages; and (3) Counts I and VI explicitly allege that

Cretella engaged in extortion, a crime, while Counts II, III, V, and VI imply that he engaged in conduct that could be sanctioned by a disciplinary committee, thereby endangering his professional reputation.  Accordingly, under <u>Food Lion</u> and <u>Harris</u>, Cretella is required only to prove that Kuzminski acted negligently.  <u>See</u> 458 S.E.2d at 584; 325 S.E.2d at 725.

Cretella alleges that Kuzminski made the statements at issue knowing that they were false or without using reasonable care to determine whether they were false.  Although that allegation is general, "[m]alice, intent, knowledge, and other conditions of a person's mind may be pled generally."  Fed. R. Civ. P. 9(b).  And, while the allegation that Kuzminski acted without using due care constitutes a legal conclusion that the Court is not required to accept, <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1964, Cretella's allegations and the inferences that can be drawn from them, viewed in the light most favorable to him – e.g., the fact that Kuzminski accused Cretella of breaking the law and rules of professional ethics without explaining or providing any evidence for his belief, and that Kuzminski asked other people to provide "documentation" about Cretella's activity to the Maryland State Bar Association, implying that Kuzminski did not have enough evidence by himself to support his claims – indicate that Cretella could satisfy his burden of proof on this issue.

C.    <u>Affirmative defenses</u>

In his response to Cretella's Complaint, Kuzminski suggests that his statements were privileged, arguing that he was entitled to complain about Cretella to the Maryland State Bar Association.[4]  He also claims that they are true.  But, whether a defendant in a

---

[4] The common-law defense of qualified privilege protects a communication that was made (1) in good faith (2) by a person with an interest in, or a legal, moral, or social duty with

defamation action is protected by a privilege is not a matter to be resolved in the context of a motion to dismiss. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (ruling that a motion to dismiss "does not resolve ... the applicability of defenses"); <u>see</u> <u>Verrinder v. Rite Aid Corp.</u>, 2006 WL 2375630, at *1 (W.D. Va. 2006) (ruling that an adequately-pled claim of defamation may survive a motion to dismiss, even if a qualified privilege exists). Thus, Kuzminski's arguments are premature at this stage of these proceedings.

4.    <u>Conclusion</u>

Because Cretella has adequately pled each of the elements of a claim for defamation under Virginia law in Counts I, II, III, V, and VI of his Amended Complaint, the Court will DENY Kuzminski's Motion to Dismiss with respect to those claims. However, for the reasons stated above, the Court will GRANT the Motion with respect to Counts IV and VII, which will be DISMISSED.

---

respect to, the subject matter of the statement (3) to a person with a corresponding interest or duty. <u>Great Coastal Express, Inc. v. Ellington</u>, 334 S.E.2d 846, 853 (Va. 1985). Whether this privilege exists is a question of law. <u>Id.</u> To defeat this defense, a party must show by clear and convincing evidence that the statement at issue was made with malice, as defined by the common law – not <u>New York Times</u> malice. <u>Id.</u> at 854 (defining the requisite intent as "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff").

It will be SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __29th__ day of May 2008